Michael DiShazzo on behalf of Appellant Claude Newsom. In 1990, Congress passed and President George H.W. Bush signed into law the Americans with Disabilities Act. Congress spoke loudly and it spoke clearly about the purposes of that law. It proclaimed that the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals. Now, while the ADA is not... What did you say about Rule 60B? The ADA, nothing, Your Honor. Let's hear about that. I'm sorry? Sure. Why don't we start with that? Sure. To begin with, Your Honor, we have presented a Rule 60 challenge under Sections 60B-4 and also 60B-6. We believe very firmly that the decisions of the district court in this case lack any legal authority whatsoever. And I will address three central issues that we find with the Court's ruling. First, we're going to take... What prong of Rule 60B are you going under one or more and tell us how you met that? Sure. Rule 60B-4, which allows for a judgment of relief from a judgment, which is void. We believe that the judgment entered in this case is void because under Rule 17C, and there are two components that we challenge today. First, the issuance of the order creating the guardian ad litem over Mr. Newsom, and then secondarily, the trust which has been created to harbor his settlement proceeds over his objection. The reason the judgment is void, there are three bases. First, Rule 17C. The Court drastically overextended the plain language of Rule 17C, and for the first time, to our belief, in the history of American jurisprudence, appointed a guardian ad litem for a competent adult. Second, the judgment is void because the Court misinterpreted Hull v. U.S., a Tenth Circuit opinion, and 42 U.S.C. 1396 P.D. 4A, which for simplicity's sake, I'll just call the statute because it's the only one I'll really be discussing today. The Court's opinion that Hull and the statute gave it the authority to create a trust over a competent adult's objection. And finally, the judgment's void because of the due process infirmities which occurred in the appointment of the guardian ad litem and secondarily, the creation of the trust. To start with Rule 17C, the text of Rule 17C could not be any more clear. It states that the Court must appoint a guardian ad litem or issue another appropriate order to protect a minor or incompetent person who is unrepresented in an action. Now, it is undisputed that Mr. Newsom is not a minor, and the district court in its decision, and you can see this in the record at 5142 and 5143, conceded that Mr. Newsom is competent. Okay, but Mr. Newsom himself had notice of that in the original district court proceedings. He objected to it. So he could have appealed it and said this is wrong. How does it make it void? Well, a couple points. First, Judge, he attempted to discharge his counsel who was foisting these orders or this trust and the guardianship upon him. It was very clear that in the record that there is a letter from— The judge may have been totally wrong in doing that. How does that make the entire proceeding and the judgment entered void? I'm having trouble with that. Well, sure. The judgment is void because under Rule 17C, there is no authority in the law whatsoever to allow the judge to appoint a guardian or to put this money in trust. There is case law, the Carter v. Finnery, I believe, case, 136 Federal— Are you contending that he had no jurisdiction over Mr. Newsom? No, I'm not contending he had no jurisdiction. I'm contending that the law, Rule 17C— Are you still on 64B-4? 60B-4? 60B-4, yes. So absent a jurisdictional problem, which you say you're not raising, don't you have to show a due process violation? There is— Otherwise, you should have appealed it. There is certainly case law to the effect of showing a due process violation brings you within the ambit of Rule 60B-4, but also the case I mentioned a moment ago, the Carter case, 136 Federal 3rd 100, says that a judgment is void if the court rendered an order outside of its legal powers. Well, he had jurisdiction. Where is the lack of due process? Well, it actually ties very much into what Judge Olin brought up a moment ago. That's why we keep asking you. Sure. To begin with, Judge, my client had a lawyer who told him, I think you should have a special needs trust. My client, who is a competent adult, said, no, I don't want to have a special needs trust. The lawyer in question, Mr. Gordon, went to the court with this information and said, I have a conflict. I need to withdraw because I think this is what should happen, and my client does not. The court refused to allow Mr. Gordon to withdraw. Mr. Gordon continued to take action directly adverse to my client's direct wishes. Well, Mr. Nishin hired another lawyer, called the judge. All this was done in open court on the record. Again, how does this deprive the court of jurisdiction or make what the judge did void? If you filed an appeal, I hear you. I'm having trouble finding out why this is a void. Well, let me take a step back to address one point that you mentioned there. None of this was done in open court on the record. These orders were entered in status conferences . . . Well, but there were telephone calls that judges would get. Counsel was on both sides. Not in open court, but nothing secret about this. Well, I would submit that, first off . . . Nishin objected in the trial court. He hired a new counsel. A new counsel called and let me in, discharged the other person. And the district court then refused to allow his counsel . . . But all these facts were known, is my point. I'm sorry. All these facts were known, and there was an immediate right of appeal. But Mr. Newsom, who was constrained by the fact that he could not have his own, a lawyer of his choice, represent him . . . He could on appeal. I'm sorry? He could have on appeal. I guess, Judge, he was not in any way being communicated with, and the record reflects that. He'd hired another lawyer. But the lawyer wasn't allowed to enroll or to do anything. The lawyer was . . . Well, the lawyer could have appealed. He didn't have to have that lawyer to file a notice of appeal. Well, I certainly understand your argument, but at the same time, I think that he has a fundamental right to have his lawyer of his choice pursue the case. Which he could have done on appeal. But to address the 60 v. 4, and then also to move into 60 v. 6. 60 v. 6 gives the trial court the authority, essentially, to amend a judgment or change a judgment in order to do substantial justice. And what I would offer to this court is that if there was ever a case where Rule 60 v. 6 should be applied, it is this one. This is a case where a series of orders have deprived my client, who is a competent adult, of any control either over his settlement funds or, frankly, over basic decisions about his life. And that brings us back to Rule 17c. Rule 17c does not empower a district court to create a guardian ad litem or appoint a guardian ad litem over a competent adult. All right, you've said that like four times. Maybe you're right. But you need to appeal those kind of decisions. You can't go in on 60 v. 6 unless you have some sort of extraordinary circumstances establishing why you delayed. What is it? Judge, Mr. Newsom was not getting any information from his counsel. He was not being communicated with. He's a layperson. I don't understand that. He hired another counsel who could walk down to the courthouse and read in the open records what was happening. Counsel knew. He communicated with the judge. He could report back to Mr. Newsom that what we asked didn't happen. I recommend that you appeal. That just doesn't fly. What I believe the record also reflects is that Mr. Newsom made a great effort to attempt to find another counsel who was willing to bring this case and to bring the motion, the Rule 60b motion, that we attempted to bring. When the other lawyer had his motion denied, he wasn't interested in pursuing the case any longer. A client who is a quadriplegic, as you know, labored intensely to find another lawyer who would be willing to do something on his behalf. He finally found us in October of that year. So I would submit that certainly under Rule 60b-6 and given his circumstances, that if there were ever an opportunity where this court should or the district court should have used its authority under Rule 60b-6, this is the case. Now— I want to go back to what I asked a while back. It seems to me like the most logical path that you have is not 60b-6 because you're basically repeating all the arguments you made under 60b-4 and you can't do that. 60b-4 would allow you to file the motion, even though you didn't appeal, if you show that there's a due process violation. And I asked you before, what is the due process violation? I'm still not sure I've heard the answer. Sure. The due process violation, I think, is in the fact that Mr. Newsom had a guardianship appointed for him, a guardian ad litem, without an iota of evidence being taken. There was no motion, there was no witnesses, and there was no evidence. He had no opportunity to be heard. What transpired was the guardianship in the trust was created by a—was based upon a letter from his counsel to the judge. The orders were then issued without any process whatsoever. Mr. Newsom has a fundamental right to challenge the appointment of a guardian over his person and property, as the trial court did in this case. Why is his counsel not his agent when he asked for that? Because he's acting directly contrary to his wishes. There's no way the trial court knew that at the time. I mean, from all appearances, normally a lawyer binds their client. When a client hires them to do something and the lawyer does what they were hired to do, you don't go behind that, do you? I mean, are you saying that when a person comes into court with every indicia of authority, that notwithstanding that, you're required to have a hearing on the guardianship even though that person's own counsel asked for it? But the person's own counsel informed the court that his client did not want it. After the fact. No, before the fact. That was the basis why Mr. Gordon alleged— I thought you said the initial orders were granted by the on-duty judge at state court the day it was filed. That's not true? No, that's incorrect, Your Honor. There was in state court an interdiction of Mr. Newsom that was filed. That was done by Mr. Gordon without Mr. Newsom's knowledge or any assent whatsoever, but that is a separate proceeding. In this case, what happened was the district court in the underlying case ordered Mr. Newsom to attend a mediation. The case settled. Subsequently, Mr. Gordon, Mr. Newsom's attorney, wrote a letter to the court and said, Judge, my client does not want a special needs trust, but I think it's in his best interest, so I need to withdraw because I don't—we have a conflict. And the district court said, no, you may not withdraw. You may not leave. I am going to institute a special needs trust. I am going to appoint a guardian. And before either of those things happened, Mr. Newsom had an absolute due process right to be heard, not to be represented by a lawyer who acknowledged a conflict. He had a right to be represented by a counsel who would advocate his position. He had a right to put on evidence and show that he is competent, that he is an intelligent man who has the ability to make decisions about his life and his funds. And that circles back to the district judge's holding that the hearing he did conduct was a sufficient post-deprivation hearing. Why wasn't it? It was not because the hearing which transpired, still at the hearing, Mr. Newsom didn't know the basis for the district court's ruling. The district court, for the first time in its ruling denying the 60B motion, declared that it had created these things not because Mr. Newsom was incompetent, but because he was vulnerable. And that's really where I began today was there is no basis in the law whatsoever for creating a trust or for appointing a guardian ad litem over an individual who is vulnerable. The law simply does not permit it. So to address your point more directly, Judge Jordan, he didn't even have the – he didn't know what he was up against. He was – he believed – he tried to draw the most reasonable conclusion, which was, gee, I suppose that this interdict or this guardianship and this trust has been created because I'm incompetent. But only on the second day of the Rule 60 motion did the letter from the former lawyer to the judge appear, which showed that the alleged reason for these orders was because of some vulnerability. So the entire hearing, there was no discovery prior to the hearing. There was no ability for Mr. Newsom to cross – to find out what he was up against. So the hearing, first off, post-deprivation due process is oftentimes not enough, and we would submit in this case when you are taking someone's settlement proceeds $4 million away from them and when you're essentially for the first time in the history of the federal jurisprudence creating a guardian over the person of someone, that you must have pre-deprivation due process, not post-deprivation. But for the reasons I mentioned, I don't think the post-deprivation process was anywhere near sufficient. You're out of time, but let me ask you this. Wasn't there an allegation that Lansdale, who was appointed the curator, was taking advantage of Mr. Newsom? There was some allegations to that effect. So that's the vulnerable? That apparent – There was evidence, not just allegations. There actually was hard evidence. Well, there were statements that Mr. Newsom, a competent adult, wished to give some of his money to his friend who, by the way – What was the explanation for not applying for Medicare benefits? There was a lot of evidence that was really, really not favorable to this friend. Well, what I would submit, Your Honor, is that Mr. Newsom is an adult, and he's competent, and he's entitled to make decisions on his own about what's in his own best interest. For the court to step in and usurp his autonomy and say, well, you should apply for these benefits, or you shouldn't want to give some money to the only individual who has taken care of you for the last four years, who has clothed you, bathed you, wiped you, to make some conclusion that somehow that's wrong, and that that's – that that reflects poor judgment on Mr. Newsom, such that he has to have a guardian and a trust placed over his funds, with all due respect, that's simply wrong. All right. Thank you. We can save some time for rebuttal. Mr. Conback. May it please the Court. John Conback for Intervenor Appellate Regions Bank. I think we can cut straight to the issue, and the issue is notice. It's a jurisdictional issue, and the case is Espinoza. Let's go back to due process. Okay. It's all wrapped up in the same thing, I believe. I think due process is notice here. Espinoza says, you know, you can't use Rule 60b-4 for – to circumvent the rules of appeals. This is not an ordinary appeal. You have to show a lack of notice, and I think there's plenty of evidence in the record, and you referenced some before, that Mr. Newsom had notice. He had actual notice and constructive notice. But he never had a hearing of whether he was incompetent. Well – For guardianship or trust. I think that's a different issue, and that bears upon whether the judge had the inherent authority to remove Mr. Lansdale and to appoint a guardian ad litem, a guardian for this case. Now, that issue is different from the notice issue, but I'll go into that if you'd like. You know, there's this doctrine called judicial estoppel, and it says that you can't play fast and loose with the district court. It says you cannot appear before a district judge and make representations and actions that the judge relies upon and then take a different position down the road when it suits your convenience. I believe that that informs what was going on here. Mr. Newsom wants to go back in time and act like none of this happened, as if he were litigating this case on his own from the beginning. Well, that's not what happened. Well, he did have a lawyer with a conflict of interest. He told his lawyer he did not want to trust. He did not want a guardian ad litem. He was not – he was competent. His lawyer said, I need to withdraw because I differ. I don't agree with what's in the best interest of my client. Now, why is he not entitled to conflict-free counsel before a judge without a hearing declares that he must have a guardian ad litem and he must have a special needs trust? Well, to continue along that point, the judge was led to believe that he was being represented by a curator. Mr. Newsom appeared in the lawsuit in the petition and said, Mr. Lansdale, curator for Mr. Newsom. Throughout the litigation, items were submitted to the court where Mr. Lansdale was called as curator. On February 5, 2014, Mr. Gordon, the lawyer, submitted the letter to the judge and said, look, I am the lawyer for Mr. Newsom. The curator is in charge. As you know, Mr. Newsom is totally reliant upon others. And he goes on and explains the conflict. The conflict, of course, is that Mr. Gordon did, I believe, what he should have done, which was recommend a special needs trust to preserve Mr. Newsom's eligibility for means-tested government benefits. That's why you have a special needs trust. There's plenty of jurisprudence. But Mr. Newsom disagreed with that. Mr. Lansdale certainly disagreed. Did Mr. Newsom? We don't know, you know. The judge didn't know. Mr. Lansdale did. Mr. Lansdale absolutely did. He was representing Mr. Newsom. There was a conflict of interest between counsel and Newsom's representative at that point. I think Mr. Gordon testified that he believed his conflict was more with Mr. Lansdale, the representative. Well, assuming Mr. Lansdale had the right to represent Mr. Newsom, then there's a conflict with the client. But he was the curator, right? He appeared as the curator. There's a question as to whether these interdiction proceedings in state court were valid. But that didn't come up until far later. At that point in time, Lansdale was the representative, and Lansdale and counsel for Lansdale slash Newsom were at loggerheads. Now, why isn't Lansdale slash Newsom entitled to conflict-free counsel? Well, I think the issue, I mean I hear your question, but let me try to answer it. The issue for the judge is, is Mr. Lansdale, this litigation representative, acting in the best interest of his putative ward? And the judge, the standard there, and we refer you to the Adelman case and the Chrissy case that we cited, the standard is, does the judge, does it appear that the representative has a conflict of interest with the person who he's supposed to represent? Appear is a pretty low standard. The judge was presented with evidence, a letter, by the lawyer who said, look, I don't believe this guy is acting in the best interest of Mr. Newsom. The issues were the trust, big issue about the trust, but also the suggestion that Mr. Lansdale was misusing his money. Okay, take that as a given. How do you get past, there was no hearing at which Mr. Newsom was declared incompetent and no hearing before he was, guardian ad litem was appointed and his money was put in the trust. How do you get past that? I think it's a good question, and I think I've got a good answer. The judge didn't have any reason to believe that the interdiction was invalid. Everyone in court consistently and over time had represented to the judge that there was a curator. A curator presupposes there's been some interdiction, whether it's limited or full. The judge is entitled, and I think Judge Hicks said in his opinion, he's entitled to rely on what he's told by the lawyers in their party, and he did do that. For the judge, when it came before him, the issue was not is Mr. Newsom competent. The issue was whether this representative who has appeared purporting to be a curator has a conflict with Mr. Newsom. The judge said, I believe he does. Did anybody ask for a competency hearing at any point? No, ma'am, at no point. Now, when the trust was created, and I would like to touch upon these notice issues before I'm done, but when the trust was created and more than six months go by and Mr. Newsom's latest attorneys show up, they take the position for the first time. I thought Newsom had hired an attorney before the trust was created, before the ad litem, and said, substitute me in. When Mr. Lansdale was sidelined, as I said in my brief, we get Paul Newton, a little confusing, a lawyer shows up and asks the judge to. When, like February? That was in April, or no, it was in March of 2014. Before the judgments. Before, well, there were two orders that had already been entered. If you go and read the motion to substitute, Mr. Newton says, we just received the February 19th minute entry. Well, the February 19th minute entry was the one that said that Regions Bank will be the corporate rep, that we're going to put Stelly in lieu of Lansdale, and we're going to create the trust. And then Mr. Newton says in his motion to substitute, we also asked the court to reconsider its March 17th, 2014 order. Now, that's a critical order because everything that he needed to know was in that order. It wasn't a minute entry order, it was an order, and it said that we're going to have a trust, there's going to be a corporate trustee, Regions, we have a new guardian ad litem, and most importantly, the money will be deposited in the registry of the court and the residual after the payment of all liens will be transferred to the trust. That's what Mr. Newton knew when he submitted his motion. What was the basis for reconsideration? He didn't give a basis. It was a paragraph at the end of the motion to substitute that said, out of an abundance of caution, we asked the court to reconsider these orders. My point was they knew. Not only did they know . . . They knew, the lawyers? No, Mr. Newton knew, Mr. Lansdale presumably knew, and Mr. Newsome knew, who was being represented by Mr. . . . But did Judge Hicks know? Did he know what? That the allegation being made in the motion to reconsider his March order, that those allegations were factually correct, if they were. I'm a little confused. The motion to reconsider was appended to this motion to substitute that Mr. Newton, the second lawyer, filed. And what was the basis given for substitution? They had been informed that Mr. Gordon had withdrawn, and the court eventually denied the motion to substitute and said, look, I knew all about this. I did not allow him to withdraw, and I deny your motion to substitute. Now, let me just say . . . But at that point, the judge knew that what Lansdale, Newton, Newsome wanted was different from what Gordon wanted. I think the judge knew all along that Mr. Lansdale opposed the trust. I believe that the judge believed that Mr. Lansdale was influencing Mr. Newton's decision. Why didn't you have a hearing? Why didn't somebody call a hearing to determine, is Mr. Newsome in charge of his faculties, and what does Mr. Newsome want? I think, in retrospect, that might have been a good idea. It was absolutely . . . Why is it that a deprivation of Mr. Newsome's due process rights, when he hired another lawyer to substitute in for Gordon, when the judge knew that what Gordon was doing was not Mr. Newsome's slash Mr. Lansdale's wish? I think the judge believed Mr. Newsome's will had been co-opted by Mr. Lansdale. Remember, when the judge found out, in the context of the Rule 60 motion, that there was some dispute with respect to this interdiction, the judge had a two-day evidentiator hearing, and he said, okay, bring it on. Show me what you have. And there was a lot of testimony. Remember, they put on three witnesses. We put on 11. They put on Dr. Katz, and Dr. Katz . . . I urge you to look at Dr. Katz's testimony. He's a psychiatrist. And remind me, when did that hearing occur? That was in January 27th, 28th of 2015. Okay, so this is . . . This is way after . . . . . . for the Rule 60b motion. See, the judge didn't have any reason to have a hearing before, because he had been told and was entitled to rely upon the representation of the parties that Mr. Newsome had been interdicted. I mean, why would the judge think that he had to revisit the issue? He was being presented with a representative called a curator. Is that where the finding of vulnerability came in? The finding of vulnerability was a result of the two-day evidentiary hearing that happened in January of 2015. All this evidence comes in, and the judge says, I understand that he can direct his own care, like Dr. Katz said. I understand that he is conversant, and the judge says technically or clinically competent. However, I've watched him for two days, and I've asked him . . . He asks a lot of questions. The judge asks a lot of questions. I do not believe that he is capable of handling his own affairs. And moreover, because of his . . . remember, he's quadriplegic and he's blind. Because of his disabilities, he is susceptible, he's vulnerable to people wanting to take advantage of him. And there was an abundant amount of evidence in the record that that was a real risk. The bank is spending his money to defend what he doesn't want at this point, and charging him $58,000 a year in fees to manage his trust. Is that what we're doing here? Regions Bank is a corporate trustee, and we have a fee schedule for any trust. You know, the purpose of the trust, and Dr. Katz said, I recommend to my quadriplegics that they structure their settlements or judgments in such a way that the money . . . to defend what Mr. Newsom says he doesn't want. The bank is a corporate trustee. It has the right under the trust instrument to use the corpus to defend a tax on the trust. We have an obligation to defend the trust, both statutorily in the Louisiana Trust Code and through the common law. Yes, I think the bank is . . . Why isn't the best course of action at this point to have a competency hearing for Mr. Newsom and decide whether he's confident? Well, that was up to the judge. I think the best course of action for Mr. Newsom would be to file a motion to dissolve the trust. I thought that's what he did. No, we filed a Rule 60B motion saying all these orders of Judge Hicks last year are void, ab initio. There's a big difference. The second, the motion to dissolve the trust . . . Isn't that . . . doesn't that presume that you want the trust dissolved? Well, there's a big difference. Now, there's a big difference. There's . . . one is trying to undo what happened last year. The bank's trying to hang on to the money it's been paid so far. That's why we're here. Is that what we're saying? If Mr. Newsom tomorrow filed to dissolve the trust, the bank would not object. No, I would not agree with that. It would be in violation of the court's order. It would be in violation of the court's order. Regions was ordered to be the corporate trust . . . Johnson, if Mr. Newsom files tomorrow a motion to dissolve the trust . . . Well, he can do that. I'm not so sure that the judge would dissolve the trust. I don't believe any circumstances have changed. That would be up to Judge Hicks. I can't speak for Judge Hicks. We would be present because we're the trustee. I'm concerned. I believe and I think the Regents believe that the trust is appropriate for Mr. Newsom in light of all this evidence. The judge clearly believed that. His own mother and aunt believed that. When has he had a competency hearing? That's the thing. When has there ever been a competency hearing? Well, there was a two-day hearing during which the issue of competency . . . He was not found incompetent. Well, if you read the judge's ruling carefully, I would suggest the judge found him incompetent to manage his affairs. He says, I'm relying on what Dr. Katz told me and I agree with Dr. Katz. He can manage his care. He can say, I need a pain pill or I have this problem. What Dr. Katz said, he was asked specifically, do you believe that he can . . . Is he competent to manage his affairs? Dr. Katz's response is interesting. He goes, well, he's blind so he needs some help. But, otherwise, he's competent to direct his care. That's what Dr. Katz said. That's a big difference to direct his care and to manage this money. Remember . . . Did he have notice that this hearing was going to be about his competency to manage his money? Did who?  Well, I would hope. We filed a fifty-page pre-trial brief where we included all of these cases from Riley through Hill forward explaining that the judge had the right, if he found the litigant in need of protection, to create a trust. The judge found Mr. Newsom in need of the court's protection. There's no doubt about it. They want to frame this as competency. If you look at Wright and Miller . . . You're saying there is an incompetency finding. I think that the judge . . . Now, I just need you to say it, one way or another. Was there a finding that he's incompetent within the meaning of the rule? I believe the judge found him incompetent to manage his affairs. I agree. I mean, I have to read what the judge wrote in his ruling. He's very clear. He says, I find him clinically and technically competent, but . . . but . . . I've observed him. I'm aware of his limitations. I find what he held was that he was not able to manage his affairs, that he needed the protection of the court, that he was vulnerable to predators. The judge has got an important paragraph in his ruling. Now, that happened . . . Who was his lawyer at that hearing? Mr. Kinney and Company. They showed up in November of 2014 or so. Remember there was an intervening lawyer. It wasn't Newton. Ma'am? It wasn't Newton. No, ma'am. Newton was . . . he disappeared in March or April of 2014. There was an intervening lawyer, John Woodfield from Gulfport. He was hired, by the way, the day that the court dismissed the case. This bears upon the notice issue. Mr. Woodfield clearly had notice. He was representing Mr. Newsom within the appellate period. It's very important. If I can direct the court . . . and I want to do this because it's not in my brief. If you just bear with me for two seconds. Mr. Woodfield submitted . . . or we submitted at the hearing Mr. Woodfield's time sheet. I'll refer you to Record Document 4732. First meeting with Eugene Lansdale. That was on May 7, 2014. That is the very day that the judge dismissed the case with prejudice. There are any number of time entries afterwards. Review files. Telephone conference with the clerk of court. There is a conference with the bank's trust representative on May 21, well within the appellate period. There's an email after that. It says, we understand you have been detained by Mr. Newsom to assist him in making requests of Regents the trustee. That is Record Document 4736. They knew. They had notice. They had every ability to appeal. It goes back to Espinoza. It goes back to Judge Thomas from the Supreme Court that said, look, to find a due process violation, you have to find that there was no notice. By the way, you don't have to have service. Actual notice is enough. Here we've got actual notice through two lawyers at least. We have constructive. Well, we've got constructive notice through two lawyers. We have actual notice, I think, as I've shown here through those lawyers. I think he knew. I'm running out of time. Espinoza, though, says it applies when there's a lack of notice or the opportunity to be heard. Even if you're right on notice, if he was not given the opportunity to be heard, then Espinoza would say that 60 v. 4 applies. You can be heard via appeal. I looked at that, too, and that case is very clear. It's your opportunity to be heard through appeal, and it says that in Espinoza. There's some Supreme, I mean, First Circuit precedent that applies to Espinoza, and I forget the name of the case at the moment. So you're not relying on the 60 v. hearing that occurred later? Well, I don't believe that Mr. Newsom has a recourse under Rule 60 v. because he had notice through all these channels and did not appeal. You can't use Rule 60 v. to revisit all this. You can't use it in lieu of an appeal. Remember, 60 v. is not even available to fix a legal error. You have to find a double abuse of discretion almost. It's the highest, most deferential standard that I know of. That's where I was going to start, and it looks like that's where I'm going to have to end. Do you all have any other questions? A couple minutes. You've got 42 seconds. I can talk about the power to create the trust. I think that's well established. Van Hoy, I think Judge Clement was on the panel. There's the Lee case. Do you know about the Lee case? That's Judge Stewart. Remember, they say that those cases only arose under the Federal Tort Claims Act. Well, if you go look at the Federal Tort Claims Act, it says that the United States waived sovereign immunity, and we're going to allow individuals to sue the government, and we're going to apply state substantive law. Judge Stewart says that in the Lee case. I think the power to place money in trust once you get the lump sum from the tortfeasor is inherent with the courts. It has nothing to do with state law or federal law. It's just there. Thank you. All right. Thank you. All right, Mr. D'Souza, you have five minutes. Judge Owen, on a couple occasions you asked about the competency hearing and what the conclusion was, if any, if there was a competency hearing. Well, at the hearing on the R-Rule 60B motion, the court heard the testimony of Mr. Newsom, and it concluded in its findings and its decision, and again, you can see this in the record at 5142 and 5143, it found him to be competent. And that finding of competence, in my view, absolutely eliminates, one, any ability to create a guardianship over Mr. Newsom, and secondarily, I have not yet had the opportunity to discuss the whole case. I believe that the finding of Mr. Newsom's competence also plainly precludes the trust which was created over his settlement funds. I thought the explanation was, by opposing counsel, that he was found to be competent in directing his daily activities, like I need my medicine or whatever, I'm hungry, whatever, but that there was no competency finding as to his financial decision making. That's what was represented to the court. Was that not correct? That is incorrect. He was found to be technically competent, I believe, was the exact word. He's technically mentally competent. Right. But then, as counsel said, Judge Hicks went into a litany of reasons why he didn't think that he, at this time, was able to manage his own affairs, including evidence related to his lack of experience in handling business transactions, handling his own money. He mentioned his disability. Judge, with respect to the first couple of points there, every day in district courts around this country, people receive large sums of money. I'm not disputing that, but I think, to be fair to the record, you need to base your argument on what Judge Hicks actually held. I think he said he's technically mentally competent, but then he gave a lot of reasons why he concluded that he was not competent in this context. Well, what I would say with respect to that is that competency is determined based upon state law. And in this case, Louisiana law says that a person is competent so long as they can consistently make reasoned decisions about their property or person. And nothing, okay, so clearly the findings and the testimony of Claude Newsom demonstrated unequivocally that he has the ability to make decisions. Physically, is he limited? Of course. No one could possibly deny that. But mentally, Judge, he has every ability to make the decisions. Now, if you want to say he's not ultra-educated in financial matters, perhaps one could say that. But that's the case of everyone. That's not a standard, or many people. That's not a standard that I believe a court can apply and to say, well, you have the ability to make a decision, but we think you might make a poor one. That's not something the court would have done to an able-bodied person. It is merely because Mr. Newsom has a physical disability that this discussion about whether or not he's going to make smart decisions came into play. I would submit the court has no authority to make a judgment about his own judgment, about how he's going to decide to spend his money. Respond to the argument that opportunity to be heard encompasses appeal. Judge, that would really get back to, I believe, the Thomas v. Humfield case, which said unequivocally, the Fifth Circuit said, that before a guardian can be appointed. That's not in the 60b-4 context. It's in the Rule 17 context. You're getting to the merits when you're arguing that case. I'm asking procedurally, under 60b-4, if the opportunity to file an appeal is a sufficient opportunity to be heard. And I would just say that that gets back to some of the things I mentioned before, which is he had a lawyer who was acting contrary to his interests. He tried to get another lawyer. But then he had Mr. Woodfield. And Mr. Woodfield, Mr. Newsom knew what the judgment said. He hired Mr. Woodfield to investigate all this. And lots of stuff. He had actual knowledge of what happened in the court. He had time to file an appeal. He had a competent lawyer who was representing him. Why is that an opportunity to be heard? Well, Judge, I believe that the record reveals that Mr. Newsom made a diligent effort to get his attorneys to take action, to do something about this. And it was only until he got to us that he found lawyers that were willing to file the 60b motion at that point in time, which was what was available to him. And what I would note is in the… He could have filed a pro se notice of appeal for that matter. What I would note is, Judge, in the Carter v. Pennery case 136, Federal Third 100, this Court said that, first off, Rule 60b motions should be liberally interpreted to do substantial justice. And with respect to Rule 60b-6 in particular, it is a grand reservoir of equitable power to do justice in a particular case. And you made a great point, Judge Owen. That motion, even if you take it out of the Rule 60b context, the courts have consistently said you don't judge a pleading by its title. And those pleadings unequivocally said dissolve this trust. So even if you were to find some infirmity in the 60b motion that it was improperly filed or that the timing was inappropriate or he could have taken an appeal, that motion clearly seeks the dissolution of the trust based upon the fact that he is a competent adult. You mean the motion to reconsider? The 60b motion was a — if you interpret it for what it actually asked for, it plainly asked for the trust to be dissolved. And the Court refused to deny the trust based upon Rule 17c, which was incorrect, and it refused to get rid of the trust due to its interpretation of whole, which, for the reasons we've laid out in our brief at length, has no applicability here over a competent adult. No court in the history of America has ever overseen a trust being imposed on a competent adult. Are you back where you started? That's how you open. I think — You're also out of time. Thank you, Judge. All right. Thank you, sir. We have your argument. All right. The Court will be in recess until 9 o'clock in the morning.